


HMG/PAR:USAO#2020R00205

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** CCB-21-0107 |
| | : | |
| **v.** | : | **(Conspiracy, 18 U.S.C. § 371; Interstate Transportation of Stolen Property, 18 U.S.C. § 2314; Tax Evasion, 26 U.S.C. § 7201; Aiding & Abetting, 18 U.S.C. § 2; Forfeiture, 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c))** |
| **SAURABH CHAWLA,** | : | |
| **Defendant.** | : | |
| | : | **UNDER SEAL** |
| | : | |

**...oOo...**

**INFORMATION**

**COUNT ONE - CONSPIRACY**

The United States Attorney for the District of Maryland charges:

**INTRODUCTION**

At times material to this Information:

1. Defendant **SAURABH CHAWLA ("CHAWLA")** was a resident of Maryland, Texas, and Aurora, Colorado.

2. SC2 and SC3 were relatives of **CHAWLA**, who lived in Worcester County, Maryland.

3. THECHEETAHEXPRESS.COM, LLC ("Cheetah Express") was a company created in Maryland that claimed to act as a consumer electronic reseller. Cheetah Express was later registered to do business in Colorado.

4. eBay Inc. ("eBay") was an e-commerce corporation based in California that facilitated sales of goods and merchandise through its website. eBay charged sellers fees to list items and when goods and merchandise were sold.

5. PayPal Holdings, Inc. ("PayPal") was an online payments corporation based in California that supported online money transfers and served as an alternative to more traditional payment methods such as cash, checks, wire transfers, and credit card payments for services, goods and merchandise.

6. eBay often used PayPal to process online payments, including payments for the purchase of goods and merchandise offered on eBay.

7. Amazon.com, Inc. was a publicly traded technology company based in Seattle, Washington, which sold items online to consumers and also acted as a marketplace through which buyers and sellers could engage in e-commerce.

8. Apple, Inc. was a publicly traded technology company headquartered in California that developed and sold consumer electronics, including iPods and iPads.

9. Bank of America, PNC Bank, and The Bank of Ocean City were financial institutions as defined in 18 U.S.C. § 20.

10. The Bank of Ocean City had bank branches, ATM machines and safe deposit boxes in Worcester County, Maryland.

STOCK

11. Kristy Stock ("STOCK") lived in New Mexico, and worked as a program manager for the Central Consolidated School District of New Mexico (hereinafter "School District") during the time period 2010 to 2019.

12. STOCK oversaw a School District program that provided Apple iPods to students for math and reading instruction, with the intent of benefiting Native American children living in New Mexico on tribal reservations.

13. On behalf of the School District, STOCK used federal grant money to make bulk purchases of iPods, multiple times each year, and stored unused iPods.

KUKTA

14. Joseph Kukta ("KUKTA") was a resident of Laurel, Delaware.

15. FedEx Ground was a wholly owned subsidiary of the publicly traded entity FedEx Corporation. FedEx Ground was headquartered in Moon Township, Pennsylvania, and operated multiple distribution centers throughout the United States.

16. FedEx Ground operated a facility located in Seaford, Delaware ("the FedEx facility"), which handled all FedEx Ground and FedEx Home Delivery packages passing through the Delmarva Peninsula, stretching from Smyrna, Delaware to Pocomoke City, Maryland and from the Chesapeake Bay to the Atlantic Ocean.

17. KUKTA worked as a Senior Manager at the FedEx facility from in or about 2007 to in or about July 2019.

18. As the most senior employee at the FedEx facility, KUKTA oversaw operations at the FedEx facility and supervised over 100 employees and contractors.

BENDER

19. James Edward Bender ("BENDER") was a resident of Baltimore, Maryland.

20. BENDER formed a company called Hidden Gem Furniture to sell free and discounted furniture that he purchased and restored.

21. BENDER controlled and operated multiple online accounts through eBay, including "HiddenGemFurniture" ("HGF"), "EddiesAffordableGear" ("EAG") and "AffordableGoodies4You" ("AG"). EAG and AG were intended to sell sports related merchandise, including jerseys and shirts.

22. The HGF eBay store had been created by Person A, who later agreed to let BENDER and **CHAWLA** use it to sell goods and merchandise.

23. BENDER used, operated and controlled a PayPal account ending in 4211 ("PayPal 4211"), which was linked to HGF, EAG, and AG.

## THE CONSPIRACY AND ITS OBJECTS

24. From in or about at least 2009 until in or about July 2019, in the District of Maryland and elsewhere,

**SAURABH CHAWLA,**

the defendant herein, did knowingly and willfully combine, conspire, confederate and agree with STOCK, KUKTA, BENDER, and persons known and unknown, to commit certain offenses against the United States, namely, to:

a. knowingly and willfully devise and intend to devise a scheme and artifice to defraud businesses and individuals, including eBay, Amazon, PayPal, eBay customers, and the manufacturers and distributors of goods and merchandise, and obtain money by means of

materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343; and

b. unlawfully transport, transmit, and transfer, and cause to be transported, transmitted, and transferred in interstate commerce, stolen goods, wares and merchandise, which had a value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud, in violation of 18 U.S.C. § 2314.

## METHODS AND MEANS

eBay, Amazon, PayPal, and eBay Customers

25. It was part of the conspiracy and scheme to defraud that **CHAWLA** used and controlled multiple eBay stores, including thecheetahexpress, eurotronics_4_less, and eurotronics-4-less.

26. It was further part of the conspiracy and scheme to defraud that **CHAWLA** and SC2 used a PayPal account ending in 5001 ("PayPal 5001") and a PayPal account ending in 4315 ("PayPal 4315").

27. It was further part of the conspiracy and scheme to defraud that after eBay suspended thecheetahexpress and eurotronics_4_less stores from operating, **CHAWLA** used and controlled multiple eBay stores, including HGF, EAG, AG, which were registered to other people.

28. It was further part of the conspiracy and scheme to defraud that **CHAWLA** purchased and sold stolen goods and merchandise from multiple individuals, including STOCK, KUKTA, and others, resulting in the interstate transportation of stolen goods.

29. It was further part of the conspiracy and scheme to defraud that **CHAWLA** listed and sold stolen goods and merchandise on eBay, resulting in interstate wires, including wires to and from Maryland.

30. It was further part of the conspiracy and scheme to defraud that **CHAWLA** caused BENDER, Person A, SC2, and others to provide false and fraudulent information to eBay, PayPal, Amazon, and others to hide the source of the stolen goods and merchandise **CHAWLA** caused to be sold online.

31. It was further part of the conspiracy and scheme to defraud that **CHAWLA** listed the stolen goods and merchandise on eBay at prices significantly above the price at which he purchased them.

32. It was further part of the conspiracy and scheme to defraud that **CHAWLA** provided, and caused BENDER to provide, customers with false, fraudulent, and fictitious information about the goods and merchandise **CHAWLA** was selling online.

33. It was further part of the conspiracy and scheme to defraud that **CHAWLA** obtained more than $3.5 million from the sale of stolen goods and merchandise.

New Mexico School Districts

34. It was further part of the conspiracy and scheme to defraud that **CHAWLA** engaged in interstate communications with STOCK about Apple products that STOCK had removed and stolen from the School District.

35. It was further part of the conspiracy and scheme to defraud that **CHAWLA** consistently acquired Apple products worth more than $5,000 from STOCK at significantly discounted prices, arranged for SC2 to receive them in Maryland, and listed stolen goods and merchandise from STOCK for sale on HGF and other online retail sites.

36. It was further part of the conspiracy and scheme to defraud that **CHAWLA** caused STOCK and others to ship interstate stolen goods and merchandise valued at more than $5,000 to Maryland.

37. It was further part of the conspiracy and scheme to defraud that C**HAWLA** and SC2 caused stolen goods and merchandise to be shipped interstate from Maryland to eBay customers throughout the United States.

38. It was further part of the conspiracy and scheme to defraud that in 2019, **CHAWLA** purchased Apple products that **CHAWLA** believed had been stolen by a New Mexico government employee with the initials JH from a different school district in New Mexico.

39. It was further part of the conspiracy and scheme to defraud that **CHAWLA** paid STOCK more than $350,000 through PayPal 4315, resulting in interstate wires.

FedEx

40. It was part of the conspiracy and scheme to defraud that KUKTA stole bulk packages shipped via FedEx and intended for delivery to FedEx customers, including a Walmart Distribution Center in Smyrna, Delaware.

41. It was part of the conspiracy and scheme to defraud that **CHAWLA** exchanged frequent emails with KUKTA about available goods and merchandise, resulting in interstate wires.

42. It was part of the conspiracy and scheme to defraud that **CHAWLA** agreed to purchase stolen goods and merchandise from KUKTA at approximately 50% of each item's retail price, and listed them on HGF and other online retail sites at significantly higher prices.

43. It was part of the conspiracy and scheme to defraud that **CHAWLA** arranged for KUKTA to transport the stolen goods and merchandise from Delaware to multiple locations in Maryland, including a Salisbury Wendy's Restaurant, a Salisbury Staples store, and SC2's residence in Worcester County, Maryland.

44. It was part of the conspiracy and scheme to defraud that **CHAWLA** paid KUKTA more than $1.5 million for stolen goods and merchandise, resulting in interstate wires.

## **OVERT ACTS**

In furtherance of the conspiracy, and to effect the objects thereof, **CHAWLA** and at least one of his co-conspirators committed or caused to be committed at least one of the following acts, among others, in the District of Maryland and elsewhere:

eBay, Amazon, PayPal, Manufacturers, and eBay Customers

45. In or about May 2014, to address concerns about products obtained from KUKTA, **CHAWLA** provided BENDER with a false, fictitious, and fraudulent invoice for $17,500 of video games, so BENDER could submit it to Amazon.

46. On or about July 22, 2014, **CHAWLA** received an email in which BENDER expressed concern about selling Apple products through eBay, writing that eBay "will want

receipts or proof that the apple products are licensed product and not counterfeit/stolen. Last time they grilled me on how/where I acquired such items . . . .”

47. On or about July 22, 2014, **CHAWLA** sent BENDER an email suggesting that they could misrepresent to eBay that the Apple products had been obtained below the retail price through Walmart and Best Buy gift cards.

48. On or about August 5, 2014, **CHAWLA** wrote to BENDER that “If all goes well as i suspect it will, this is going to be one hell of a last 3-4 months. Apple has been my bread and butter for 7 years, welcome to the ride.”

49. In or about December 2014, after being contacted about potential sales of stolen watches by HGF, **CHAWLA** caused BENDER to send a false and fictitious email claiming HGF had contacted the liquidation company from which it bought watches, the watches were not stolen, and the watches were properly activated.

50. In or about 2015, in response to complaints from HGF customers about goods and merchandise purchased through HGF, **CHAWLA** and BENDER worked to provide the customers with false, fraudulent, and fictitious invoices, falsely showing how items sold through HGF had been originally acquired.

51. On November 29, 2015, **CHAWLA** withdrew $37,092.26 from PayPal 5001, which was then credited to Bank of Ocean City 7113, and resulted in an interstate wire communication.

52. On or about August 23, 2016, after a PayPal representative inquired about certain PayPal transfers, **CHAWLA** worked with BENDER to provide false information to PayPal.

53. On October 15, 2018, **CHAWLA** withdrew $36,217.50 from PayPal 5001, which

was then credited to Bank of Ocean City 7113, and resulted in an interstate wire communication.

New Mexico School Districts

54. On or about October 20, 2015, **CHAWLA** used PayPal 4315 to pay STOCK more than $25,000 for 200 Apple iPods stolen from the School District.

55. On or about October 24, 2015, **CHAWLA** listed 96 "Brand New Sealed Apple iPod Touch 32 GB" devices for sale on HGF, resulting in an interstate wire communication.

56. On or about August 17, 2016, **CHAWLA** purchased approximately 75 Apple iPods from STOCK, paying via PayPal 4315, which involved an interstate wire communication.

57. On or about May 16, 2017, **CHAWLA** purchased 50 iPods valued at more than $5,000 from STOCK, and caused STOCK to ship the goods and merchandise interstate from New Mexico to SC2 in Maryland.

58. On or about May 22, 2017, **CHAWLA** listed 50 "Brand New Sealed Apple iPod Touch 64 GB" devices for sale on HGF, resulting in an interstate wire communication.

59. On or about May 2, 2018, **CHAWLA** repeatedly exchanged interstate text messages with STOCK, expressing interest in 50 iPods that STOCK had stolen from the School District.

60. In or about 2018, **CHAWLA** sold more than 500 "Brand New Apple iPod Touch 128 GB Latest Model," valued at more than $5,000, which had been stolen from the School District, to eBay customers throughout the United States, resulting in the interstate shipping of stolen goods.

61. On or about June 5, 2018, **CHAWLA** and BENDER sold more than 20 stolen iPods through the eBay store for HGF, resulting in interstate wires.

62. On or about November 15, 2018, **CHAWLA** was notified by STOCK that she was going to check "the school's iPod inventory and let you know what I can get headed your way" for "Black Friday."

63. On or about November 15, 2018, **CHAWLA** sent an interstate email to STOCK, expressing his interest in the Apple iPods that STOCK was planning to steal from the School District.

64. On or about November 26, 2018, **CHAWLA** spoke to STOCK by phone, and learned that she had been able to "grab[ ]" "30 iPods" from her "district's inventory."

65. On or about November 26, 2018, STOCK warned **CHAWLA** in an interstate wire communication that "inventory [wa]s running pretty low right now, so [she] ha[d] to keep some on hand through year end for the students."

66. On or about November 26, 2018, **CHAWLA** stated that he was "definitely" interested in STOCK's 30 stolen iPods.

67. On or about November 26, 2018, **CHAWLA** paid STOCK more than $5,000 through PayPal 4315 for the 30 Apple iPods with 128GB (paying $190 each for 10 Silver and Gray iPods, 7 Blue iPods, and 3 Gold iPods), resulting in an interstate wire communication.

68. On or about November 26, 2018, **CHAWLA** caused STOCK to ship interstate 30 iPods valued at more than $5,000 from New Mexico to SC2 in Maryland.

69. On or about November 30, 2018, **CHAWLA** listed Apple iPods with 128 GBs for sale on HGF (with available colors and quantities matching **CHAWLA's** purchase from STOCK), resulting in an interstate wire communication.

70. On or about November 30, 2018, **CHAWLA** used HGF and PayPal to sell an individual two Gray Apple iPods (with serial numbers that matched those **CHAWLA** purchased from STOCK) for approximately $275 each.

71. In or about 2019, **CHAWLA** purchased more than $15,000 of Apple products **CHAWLA** believed were stolen and resold them on HGF at significantly higher prices.

72. On or about May 2, 2019, **CHAWLA** purchased 25 iPads valued at more than $5,000, which **CHAWLA** believed New Mexico government employee JH had stolen from his New Mexico school district.

73. On or about May 2, 2019, **CHAWLA** asked JH to send the 25 iPads that **CHAWLA** believed JH had stolen from his school district to SC2 in Maryland.

<u>FedEx</u>

74. In or about August 2015, **CHAWLA** purchased from KUKTA a large lot of stolen goods, including Magellan, Epson, Kenwood, and Netgear products, which resulted in the interstate transportation of stolen goods.

75. On or about December 19, 2016, **CHAWLA** caused KUKTA to be paid more than $5,000 for goods and merchandise that KUKTA stole from the FedEx facility, and made arrangements for KUKTA to take the goods and merchandise interstate from Delaware to SC2 in Maryland.

76. In or about April 2017, **CHAWLA** and SC2 paid and caused KUKTA to be paid more than $20,000 for a large lot of stolen goods, which included Netgear and Apple products, resulting in an interstate wire communication.

77. On or about April 24, 2017, **CHAWLA** sent an interstate email to SC2, asking

SC2 to pay for and accept interstate delivery of the goods and merchandise.

78. On or about June 6, 2018, **CHAWLA** caused KUKTA to be paid more than $5,000 for goods and merchandise KUKTA stole from the FedEx facility, including more than 150 pairs of Nike sneakers, and made arrangements for KUKTA to transport the goods and merchandise interstate from Delaware to SC2 in Maryland.

79. In or about December 2018, **CHAWLA** paid more than $25,000 for goods and merchandise KUKTA stole from the FedEx facility, and made arrangements for SC2 to obtain them in Maryland and reship the goods and merchandise interstate.

18 U.S.C. § 371.

**COUNT TWO – INTERSTATE TRANSPORTATION OF STOLEN GOODS**

The United States Attorney for the District of Maryland further charges that:

1. Paragraphs 1 – 23 and 25 – 79 of Count One of this Information are incorporated here by reference.

2. On or about June 6, 2018, in the District of Maryland and elsewhere,

**SAURABH CHAWLA,**

the defendant herein, did unlawfully transport, transmit, and transfer, and cause to be unlawfully transported, transmitted, and transferred in interstate commerce from Delaware to Maryland, certain stolen goods, wares and merchandise, namely more than 150 pairs of Nike sneakers, which had a value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud.

18 U.S.C. § 2314
18 U.S.C. § 2

**COUNT THREE - TAX EVASION**

The United States Attorney for the District of Maryland further charges that:

On or about October 12, 2018, in the District of Maryland and elsewhere,

**SAURABH CHAWLA,**

the defendant herein, when he was a resident of Colorado, did willfully attempt to evade and defeat a large part of the income tax due and owing to the United States for the calendar year 2017, by preparing and causing to be prepared, and by signing and causing to be signed, a false and fraudulent Tax Return (Form 1040), which was filed with the IRS. In that false income tax return, the defendant stated that his adjusted gross income, line 37, was $122,793, and that the amount of the tax due and owing thereon was $17,371. In fact, as he then and there knew, his joint taxable income for the calendar year was well in excess of the amount reported, upon which taxable income there was owing to the United States an income tax well in excess of the amount reported as taxable income.

26 U.S.C. § 7201
18 U.S.C. § 2

**FORFEITURE ALLEGATION**

The United States Attorney for the District of Maryland further alleges that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on Counts One or Two of this Information.

2. Upon conviction of the offenses alleged in Counts One and Two of this Information,

**SAURABH CHAWLA,**

the defendant herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

**Substitute Assets**

3. If, as a result of any act or omission of the defendant, any such property subject to forfeiture,

(a) cannot be located upon the exercise of diligence;

(b) has been transferred, or sold to, or deposited with a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Date: 4-20-2021

Jonathan F. Lenzner/hg
JONATHAN F. LENZNER
Acting United States Attorney