**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

| | | | |
|---|---|---|---|
| *Harry M. Gruber* | *Mailing Address:* | *Office Location:* | *DIRECT: 410-209-4835* |
| *Assistant United States Attorney* | *36 S. Charles Street, 4th Floor* | *36 S. Charles Street, 4th Floor* | *MAIN: 410-209-4800* |
| *Harry.Gruber@usdoj.gov* | *Baltimore, MD 21201* | *Baltimore, MD 21201* | *FAX: 410-962-3910* |

April 12, 2021

FILED _____ ENTERED
_____ LOGGED ✓ RECEIVED

MAY 1 9 2021

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
By____ NM DEPUTY

Adam Ruther
Rosenberg Martin Greenberg, LLP
25 South Charles Street, 21st Floor
Baltimore, Maryland 21201

> Re:   United States v. Saurabh Chawla
> Crim. No. CCB 21- 0107

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Saurabh Chawla (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted **by April 14, 2021**, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offense of Conviction</u>

1.      The Defendant agrees to waive indictment and plead guilty to an Information, which will charge the Defendant in Count One with Conspiracy, in violation of 18 U.S.C. § 371, in Count Two with Interstate Transportation of Stolen Property, 18 U.S.C. § 2314, and in Count Three with Tax Evasion, in violation of 26 U.S.C. § 7201. The Defendant admits that the Defendant is, in fact, guilty of these offenses and will so advise the Court.

Elements of the Offense

2.     The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are that in or about the time period alleged in the Indictment, in the District of Maryland:

Count One - Conspiracy

First, the Defendant and at least one other person entered into the unlawful agreement alleged in the charging document;

Second, that the Defendant knowingly and willfully became a member of the conspiracy; and

Third, that at some point during the conspiracy, a member of the conspiracy knowingly engaged in an overt act for the purpose of advancing or helping the conspiracy.

Count Two - Interstate Transportation of Stolen Goods

First, that goods, wares, merchandise, securities, or money were stolen, converted, or taken by fraud;

Second, that the Defendant transported, transmitted, or transferred (or caused to be transported or transmitted) the property in interstate or foreign commerce;

Third, that at the time of the transportation or transmission, the Defendant knew the property was stolen, converted, or taken by fraud; and

Fourth, that the value of the property was at least $5,000.

Count Three – Tax Evasion

First, that on or about April 15, 2018, the Defendant attempted to evade and defeat the assessment of tax due and owing on his joint income tax return for the calendar year 2017;

Second, the Defendant committed an affirmative act constituting tax evasion described in the Indictment; and

Third, the Defendant acted willfully.

Rev. August 2018

Penalties

3.      The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 1 | 18 U.S.C. § 371 | N/A | 5 years | 3 years | $250,000 or twice the gain or loss from the offense | $100 |
| 2 | 18 U.S.C. § 2314 | N/A | 10 years | 3 years | $250,000 or twice the gain or loss from the offense | $100 |
| 3 | 26 U.S.C. § 7201 | N/A | 5 years | 3 years | $100,000 | N/A |

a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.      Payment:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the

United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

Rev. August 2018

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

i.      The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an Indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and he understands that the charges will be filed by the United States Attorney without a Grand Jury.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

a.      As to Counts One and Two, which group and apply the same guidelines and adjustments, the parties stipulate and agree that U.S.S.G. § 2B1.1 applies to these offenses, resulting in a base offense level of **six (6)**. The parties further stipulate and agree that the reasonably foreseeable losses as a result of the offenses was more than $3,500,000, but less than $9,500,000 resulting in a **eighteen (18) level** increase in the offense level. The parties further stipulate and agree that the offense level is increased (i) by **two (2) levels** pursuant to § 2B1.1(b)(2)(A), because the offense involved more than 10 victims; (ii) by **two (2) levels** pursuant to § 2B1.1(b)(10)(C), because the offense involved sophisticated means and the Defendant intentionally engaged in the acts making it sophisticated, including but not limited to using straw eBay stores to sell the stolen goods and merchandise after eBay shut him down, creating fake documents and transmitting the fake documents to eBay, Amazon, PayPal, and eBay customers, and engaging in complicated financial dealings to cover up the true nature of his relationship with Mr. Bender; and (iii) by **two (2) levels**, pursuant to U.S.S.G. § 3B1.1(c), because the Defendant was a manager or supervisor. The parties stipulate and agree that this results in an adjusted offense level of **thirty (30)**.

b.      As to Counts One and Two, the parties agree that the government has the right to seek, and the defendant has the right to oppose, **a two (2) level** increase in the defendant's offense level, pursuant to § 2B1.1(b)(4), because the offense involved receiving stolen property, and the defendant was in the business of receiving and selling stolen property;

c.      As to Count Three, the parties stipulate and agree that U.S.S.G. § 2T1.1 and 2T4.1 apply to the Defendant's offense, resulting in an offense level of twenty (20) because the reasonably foreseeable tax loss associated with the Defendant's tax offense and relevant conduct was between $550,000 and $1,500,000, resulting in an adjusted offense level of twenty (20) for Count Ten.

c.      The parties further stipulate and agree that pursuant to U.S.S.G. § 3D1.2(d), Counts One, Two, and Three are grouped together, and that pursuant to U.S.S.G. § 3D1.3(a), the highest offense level of the counts in the Group shall be used.

d.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii)

denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.       There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.       Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.       At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). The defendant and his counsel must provide the U.S. Attorney's Office with any information that will be used and/or relied upon at sentencing no less than fourteen (14) days prior to sentencing. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing.

## Waiver of Appeal

10.       In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.       The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent that such challenges legally can be waived.

i.       The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742, or otherwise, to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any

constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except the Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

        b.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Forfeiture

        11.      The Defendant understands that the Court will enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture will include assets directly traceable to the offense in Count One, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense, including a sum of money equal to the value of the proceeds of the offense, which amount is **at least \$3.5 million**. The defendant also specifically consents to the forfeiture of the following assets, which he agrees constitute assets purchased with fraud proceeds and involved in his offense:

        a.      A sum of at least \$267,435.37 in proceeds from the sale of the real property located at 25835 E Dry Creek Place, Aurora, CO 80016, to be placed in an escrow account following the sale of the property;

        b.      \$296,281.82 seized from a Bank of Ocean City Checking Account ending in 7113 (Seizure Warrant 19-2982-ADC);

        c.      \$15,115 from a Bank of Ocean City Savings Account ending in 9423 (Seizure Warrant 19-2983-ADC);

        d.      \$84,940.80 from a Fidelity Investments Account ending in 5130 (Seizure Warrant 19-2984-ADC);

        e.      \$6,909.28 from a Fidelity Investments Account ending in 4670 (Seizure Warrant 19-2985-ADC);

        f.      \$1,098,290.52 from The Vanguard Group Inc. Brokerage Account ending in 2341 (Seizure Warrant 19-2986-ADC);

        g.      \$200,106.07 from a US Bank NA Checking Account ending in 1158 (Seizure Warrant 19-2987-ADC);

        h.      \$225,602.36 from a US Bank NA Checking Account ending in 1208 (Seizure Warrant 19-2988-ADC);

Rev. August 2018

      i.   a 2013 Tesla Model S, VIN#5YJSA1CP0DFP16358 (Seizure Warrant 19-2990-ADC); and

      j.   A 2013 Infiniti QX56, VIN# JN8AZ2NF8D9550474 (Seizure Warrant 19-2989 ADC), or a $10,000 payment in lieu of forfeiture to be provided at least two weeks before the Defendant's sentencing hearing.

If specific direct or substitute assets are forfeited and liquidated, any net proceeds of the asset shall be applied to the money judgment.

12.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

13.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

14.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture, except that the Defendant may provide pre-existing documents to his wife or her agent(s) in order to facilitate the sale of the real property located at 25835 E Dry Creek Place, Aurora, CO 80016.

Restitution

17.     The Defendant agrees to the entry of a Restitution Order for the full amount of the actual losses associated with Count One, which the parties stipulate and agree is at least **$3.5 million**. The Defendant agrees that, pursuant to 18 U.S.C. § 3663 and 3663A and § 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. If restitution is not paid by the date of sentencing, the Defendant further agrees that the Defendant will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual

Rev. August 2018

stipulation. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Tax Liability & Restitution

13.     Pursuant to 18 U.S.C. § 3663(a)(3), the defendant agrees in connection with his offense in Count Three, to make restitution to the Internal Revenue Service (hereinafter "IRS") in the amount of **$713,619**, plus interest that will have accrued on that amount as measured from the date that each tax liability constituting that amount initially became due and owing to the IRS up to and including the date of sentencing. This amount is in addition to the restitution due and owing in connection with Count One of the Information. The defendant acknowledges and agrees that the amounts referred to herein are negotiated amounts for plea purposes only and do not legally bind or foreclose separate administrative or civil claims by the IRS related to the conduct that is the subject of this plea agreement. The parties agree that this agreement, and any payment under this agreement, will not constitute a settlement, waiver, or release by the IRS of any civil or administrative rights or remedies it may have against the defendant. If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly or indirectly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. See 26 U.S.C. Section 6201(a)(4). The defendant concedes that she does not have the right to challenge the amount of this assessment. See id. Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. Section 6331.

14.     The defendant understands that this agreement does not resolve any civil tax liability that he may have, and that this agreement is with the United States Attorney's Office, not with the IRS. The IRS is not a party to this agreement and remains free to pursue any and all lawful remedies it may have. The defendant agrees to cooperate fully with the IRS in the determination of his tax liability and the tax liability of any business that she has owned or controlled, and specifically agrees:

a.     that nothing in this agreement forecloses or limits the ability of the IRS to examine and make adjustments to the defendant's returns after they are filed;

b.     that the defendant is liable for the civil fraud penalty imposed by 26 U.S.C. Section 6651(f) with respect to the Form 1040 tax returns filed by him and his spouse for the tax years 2012-2018; and

c.     that the contents of any criminal file pertaining to his conduct maintained by the Criminal Investigation Division of the IRS and/or the U.S. Attorney's Office/Department of Justice may be given to civil attorneys, agents and support staff of the IRS to enable them to investigate any and all civil taxes and penalties that may be due and owing by the defendant and any entity formed or controlled by the defendant. To the extent necessary to effect such disclosure,

Rev. August 2018

the defendant waives any rights she may have pursuant to 26 U.S.C. Sections 6103(h)(4), 7213, and Federal Rule of Criminal Procedure Section 6(e).

## Collection of Financial Obligations

18.     The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. If restitution is not paid by the date of sentencing, in order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. If restitution is not paid by the date of sentencing, the Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that any financial statement and disclosures the Defendant submits will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Defendant's Conduct Prior to Sentencing and Breach

19.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

20.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement.

Rev. August 2018

### Court Not a Party

21.     The Court is not a party to this Agreement.  The sentence to be imposed is within the sole discretion of the Court.  The Court is not bound by the Sentencing Guidelines stipulation in this Agreement.  The Court will determine the facts relevant to sentencing.  The Court is not required to accept any recommendation or stipulation of the parties.  The Court has the power to impose a sentence up to the maximum penalty allowed by law.  If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement.  Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive.  The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

22.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case.  This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant.  There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement.  No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Jonathan F. Lenzner
Acting United States Attorney

*Harry M. Gruber*
Harry M. Gruber
Paul A. Riley
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney.  I understand it and I voluntarily agree to it.  Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it.  I am completely satisfied with the representation of my attorney.

4/15/2021
_____
Date

*Saurabh Chawla*  SC
_____
Saurabh Chawla

Rev. August 2018

12

I am the Defendant's attorney.  I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant.   The Defendant advises me that the Defendant understands and accepts its terms.  To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

4/19/2021

Date

Adam Ruther, Esq.

_____ FILED          ENTERED
_____ LOGGED    ✓   DECEIVE

MAY 1 9 2021

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
                              DEPUTY

## ATTACHMENT A – SAURABH CHAWLA FACTUAL STIPULATION

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Defendant Saurabh Chawla ("Saurabh") was a long-time resident of Maryland's Eastern Shore, and graduated from Salisbury University in 2007 with a Bachelors of Business Administration. Saurabh moved to Texas in July 2011, and became a resident of Aurora, Colorado in December 2014. SC2 is a relative of Saurabh, who lived in Berlin, Maryland. THECHEETAHEXPRESS.COM, LLC ("Cheetah Express") was a company organized in Maryland that claimed to act as a consumer electronics reseller. Cheetah Express was later registered to do business in Colorado.

From at least in or about 2009, until at least August 2019, Saurabh entered into an illegal agreement with Kristy Stock ("Stock"), James Bender ("Bender"), Joseph Kukta ("Kukta"), and others known and unknown, to (1) knowingly and willfully devise and intend to devise a scheme and artifice to defraud eBay, eBay purchasers, Amazon, PayPal, and the manufacturers and distributors of goods and merchandise through false pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, Saurabh admits that he and others did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343; and (2) unlawfully transport, transmit, and transfer in interstate commerce, stolen goods, wares and merchandise, which had a value of $5,000 or more, knowing the same to have been stolen, converted, and taken by fraud, in violation of 18 U.S.C. § 2314.

Beginning in or about 2009 and continuing until 2019, Saurabh routinely purchased stolen goods from other individuals and businesses (including Stock and Kukta), resulting in interstate wires, and in the interstate transportation of goods and merchandise having a value greater than $5,000. Saurabh and his co-conspirators also caused the stolen items to be listed for online sale through eBay, resulting in interstate wires. Saurabh sold the stolen goods and merchandise online through eBay and PayPal, resulting in interstate wires related to financial transactions. Saurabh then caused the goods and merchandise to be shipped interstate from Maryland to customers throughout the United States.

eBay, PayPal, and Amazon Online Transactions

Saurabh met Bender at Salisbury University, where they became good friends. Saurabh initially sold goods and merchandise on eBay through the eBay stores thecheetahexpress, eurotronics_4_less, and eurotronics-4-less; the latter two were associated with Saurabh's relatives. On or about April 27, 2014, eBay suspended the thecheetahexpress and eurotronics_4_less stores from operating on eBay. On or about April 28, 2014, Saurabh informed Bender that Saurabh's eBay account, thecheetahexpress, had been suspended "because recent account activity has raised serious security concerns."

1

Shortly thereafter and continuing until law enforcement executed search warrants in 2019, Saurabh convinced Bender to allow Saurabh to sell goods and merchandise online through eBay accounts Bender controlled in exchange for Saurabh paying Bender a commission. Bender controlled and operated multiple online eBay and Amazon accounts, including HGF, which was registered to Person A, "EddiesAffordableGear" ("EAG") and "AffordableGoodies4You" ("AG"). Bender used, operated and controlled a PayPal account ending in 4211 ("PayPal 4211"), which was linked to HGF, EAG, and AG. Over time, Saurabh offered and sold a large amount of stolen goods and merchandise for sale through HGF, other eBay stores, and other online marketplaces. At one point, Saurabh had 400 active listings for goods and products on eBay.

Selling through Bender's accounts was necessary after eBay and Amazon suspended the other accounts used by Saurabh and his relatives, and allowed Saurabh to hide the fact that Saurabh/Cheetah Express was the seller of the goods and merchandise. Instead, it appeared to Amazon, eBay, eBay customers, PayPal, and purchasers of items that Bender and/or Person A was the seller of stolen goods and merchandise that Cheetah Express was in reality purchasing and reselling. In or about May 2014, eBay notified Bender that it was suspending EAG and AG because eBay had linked the accounts to Saurabh's eBay account. Thereafter, HGF became the primary means for Saurabh to sell the goods and merchandise. Bender let Saurabh login directly to the eBay portal that controlled HGF, EAG, and AG. Bender also gave Saurabh access and control over Bender's PayPal 4211. Receipts from the HGF sales were first deposited to PayPal 4211, before later being transferred to a PayPal account and bank accounts controlled by Saurabh.

So he could continue to sell on eBay and Amazon, Saurabh caused Bender and Person A to repeatedly deceive online platforms such as Amazon, eBay, as well as the manufacturers and distributors, as to the source of the goods and merchandise being sold by Saurabh and as well as to Saurabh's role in the sales. Saurabh and Bender repeatedly crafted deceptions and caused false information to be presented to cover up the true origins of the goods and merchandise offered online.

In May 2014, Saurabh caused Kukta to create a fake invoice that had false information about the parties involved in the transaction and the price paid per unit purchased. Saurabh then had Bender submit the fake invoice from Kukta to Amazon because Amazon questioned certain goods and merchandise listed for sale on its marketplace through Bender's account. In late May 2014, Saurabh arranged for a friend of his to create "dummy invoices," which he then had his relative send to eBay. Saurabh directed Bender and Person A to misrepresent that Apple products had been obtained using gift cards at large retailers.

Saurabh also created fake invoices himself that were sent to eBay customers on numerous occasions. Saurabh knew the invoices were not accurate and deleted them from his computer and from his email account.

In July 2014, Saurabh and Bender emailed about Apple products, with Bender asking Saurabh "What is a plausible way that I could have acquired these items at a decent price and what evidence could I provide to back that up? ... shady, yes, but possible?" In August

2

2014, Saurabh and Bender arranged for Person A to provide false information to eBay to allow the sales of goods and merchandise to continue.

In 2015, after eBay customers complained about goods and merchandise purchased through HGF, Bender and Saurabh worked to provide the eBay customers with false, fraudulent, and fictitious invoices, falsely showing how items sold through HGF had been originally acquired. For example, on January 24, 2015, Saurabh sent a fake Walmart invoice to Bender, advising Bender should "[d]ouble check it, but [Saurabh] think[s] it looks clean."

In 2016, Saurabh emailed with Bender about inquiries by PayPal about the relationships between Bender and Saurabh. Saurabh was very concerned, writing: "The biggest issue is we don't want them contacting ebay because then shit is over." Saurabh caused Bender to provide false information to PayPal and later suggested they stop moving the money through PayPal and move to bank to bank transfers.

From approximately 2009 to August 2019, Saurabh and his co-conspirators' false representations allowed Saurabh to obtain more than $3.5 million from online sales of stolen goods and merchandise. He accumulated the criminal proceeds in various bank accounts he controlled and also used the money to purchase assets, including a 2013 Tesla Model S, a 2013 Infinity QX56, and a residence in Aurora, Colorado.

New Mexico School Districts

Stock lived and worked in New Mexico, where she was an administrator for the Central Consolidated School District of New Mexico (hereinafter "School District"). Saurabh began purchasing stolen Apple products from Stock through eBay beginning in or about 2012. In May 2012, Saurabh reached out to Stock and began purchasing stolen Apple products from Stock outside eBay. Stock stole the Apple products from the School District's storage locations, and offered them for sale to Saurabh at significantly discounted prices. From in or about September 2012 to May 2013, and again from October 2015 to October 2018, Saurabh and Cheetah Express were the exclusive purchasers of the products Stock stole. During this time, Saurabh and Stock corresponded through interstate emails and texts.

At Saurabh's direction, Stock usually mailed the Apple products interstate from New Mexico to SC2's residence in Berlin, Maryland. Saurabh paid Stock through a PayPal account ending in 4315, which was registered to SC2 and linked to credit cards used by Saurabh and SC2, resulting in interstate wires. Saurabh paid Stock more than $350,000 from October 2015 to November 2018, and in total paid her more than $450,000.

In or about 2019, Saurabh also purchased Apple products that he believed had been stolen by a different person working at another school district in New Mexico ("Employee#2). Saurabh's purchases of stolen goods from Employee#2 included a May 2019 purchase of 25 iPads for $5,000. Saurabh resold the Apple products he purchased from Employee#2 on eBay at a substantial markup. At Saurabh's direction, Employee #2 interstate shipped the iPads, which cost more than $8,000, to SC2 in Maryland. After SC2 obtained the stolen goods from Stock, Kukta, and others, Saurabh listed the goods for sale online through eBay at a substantial markup.

3

FedEx

Kukta lived and worked in Delaware, where he was a Senior Manager at the FedEx facility located in Seaford, Delaware ("the FedEx facility"). The FedEx facility handled all FedEx Ground and FedEx Home Delivery packages passing through the Delmarva Peninsula, stretching from Smyrna, Delaware to Pocomoke City, Maryland and from the Chesapeake Bay to the Atlantic Ocean.

Saurabh knew that Kukta worked for FedEx in Delaware, and knew that the goods and products he bought from Kukta were brand new and in their original packaging with the shipping labels removed. Kukta sent Saurabh weekly lists of available goods and merchandise by email, resulting in interstate wires. In general, Saurabh paid Kukta approximately 50% of the retail price for the goods and merchandise Kukta had stolen.

For approximately 10 years, from 2009 to June 2019, Saurabh purchased large quantities of stolen goods and merchandise from Kukta. Kukta obtained most of the goods and merchandise he sold to Saurabh from bulk packages shipped via FedEx and intended for delivery to FedEx customers, including a Walmart Distribution Center in Smyrna, Delaware. Kukta transported the stolen goods and merchandise from Delaware to multiple locations in Maryland, including a Salisbury Wendy's Restaurant, a Salisbury Staples store, and SC2's residence in Berlin, Maryland.

Saurabh then listed the goods and merchandise for sale through eBay – primarily through HiddenGemFurniture ("HGF"). SC2 would meet Kukta and provide payment. Saurabh then offered to sell and sold the goods and merchandise from Kukta to eBay customers at significant markups (often 100% price increase) than he had paid for the products. Saurabh primarily paid Kukta with counter checks written by SC2 and drawn on the Cheetah Express bank account at Bank of Ocean City ending in 7113 ("BOC 7113"), resulting in interstate wires. In total, Saurabh paid Kukta more than $1.5 million for goods and merchandise valued at more than $3 million.

Tax Evasion

From 2009 to 2017, Saurabh evaded the accurate assessment of his income taxes by intentionally failing to truthfully report the income earned from the operation of Cheetah Express and a predecessor corporate entity. Saurabh's scheme to evade taxes was centered on the fraudulent inflation of expenses, mainly the Cost of Goods Sold (COGS) related expenses, to lower the income reported on the Cheetah Express Schedule C's for the 2009 – 2017 tax years.

In or about April 2015, Saurabh and Bender reached an agreement that Bender would file false tax returns with the IRS, falsely reporting as Bender's gross receipts, amounts that had actually been generated by Saurabh's sales through HGF. Bender also falsely deducted as an expense the transfers of money from Bender's PayPal 4211 to Saurabh. This was necessary because receipts from the sales of Saurabh's goods through HGF were being reported to the IRS on a Form 1099-K issued by PayPal to Bender.

Saurabh filed false returns for the tax years 2009 through 2017, which falsely reported his COGS and other expenses, underreported Saurabh's adjusted gross income and understated

4

Saurabh's tax due and owing. In total, Saurabh stipulates that he failed to pay the United States at least $640,000 in additional taxes due and owing for the tax years 2009 – 2017, as detailed in the below table.

| Year | Decrease to Cheetah Express Expenses as Filed $ | Corrected Taxable Income $ | Additional Tax Due and Owing for Criminal Purposes $ |
|------|------|------|------|
| 2009 | 100,894 | 115,683 | 36,015 |
| 2010 | 78,441 | 106,041 | 29,418 |
| 2011 | 113,951 | 146,640 | 38,482 |
| 2012 | 190,711 | 212,207 | 63,332 |
| 2013 | 296,996 | 355,814 | 102,709 |
| 2014 | 313,863 | 394,421 | 113,669 |
| 2015 | 244,469 | 319,077 | 85,321 |
| 2016 | 214,678 | 278,735 | 74,562 |
| 2017 | 274,235 | 366,813 | 99,814 |

Among other evidence, agents identified accurate financial information for Cheetah Express that was maintained by Saurabh for each tax year (*i.e.* a second set of books) and significantly contrasted with the financial figures Saurabh provided to select tax preparers and reported on Saurabh's tax returns. The accurate financial information was recovered by federal agents in 2019 search warrants.

On October 12, 2018, in the District of Colorado, Saurabh willfully made and subscribed a U.S. Joint Income Tax Return, IRS Form 1040, for the year 2017, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter. That Form 1040, which was filed with the IRS, falsely reported that his adjusted joint gross income, line 37, was $122,793, and that the amount of the tax due and owing thereon was $17,371, when the defendant then and there knew that his joint taxable income for the calendar year was well in excess of the amount reported, upon which taxable income there was owing to the United States an income tax well in excess of the amount reported as taxable income.

As part of his participation in the conspiracy and scheme to defraud, Saurabh received more than $10,000 per year from the eBay sales of stolen goods and merchandise.

From 2009 to 2017, Saurabh also knowingly aided and abetted the tax evasion crimes of his relative, SC2, and Saurabh is therefore responsible for the tax losses stemming from SC2's tax evasion. From 2009 to 2018, SC2's scheme to evade taxes mainly involved the underreporting of his $60,000 per year of wages from Cheetah Express, resulting in a tax loss related to SC2's returns of more than $70,000.

In total, Saurabh caused a tax loss of more than $700,000 to the United States relating to the income of Saurabh and SC2.

I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I understand it, and I voluntarily agree to it. I am completely satisfied with the representation of my attorney.


4/19/2021
Date

Saurabh Chawla

6